

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

ALD C. MANN
RNEY GENERAL

Honorable George W. Cox
State Health Officer
Austin, Texas

Dear Sir:

> Opinion No. O-1970
> Re: May expenses incurred in
> holding the Short School for
> Water Works and Sewage Plant
> Operators be legitimately paid
> from public funds? And relat-
> ed questions.

Your recent request for an opinion of this de-
partment on the questions as are herein stated has been
received.

We quote from your letter of February 15, 1940,
as follows:

> "Since certain diseases are transmitted by
> contaminated water and improper sewage disposal,
> this Department devotes considerable attention
> to the matter of water sanitation and proper dis-
> posal of sewage. With the limited field per-
> sonnel provided, the Department soon learned the
> difficulty in training local water and sewage
> personnel in the field, and, therefore, some
> twenty years ago instituted a training school
> for the water and sewage plant operators who are
> in charge of the various water and sewage utili-
> ties throughout the State.

> "Although this school is voluntary, the
> response has been far beyond expectations. As
> a matter of fact, it was so well received that
> some thirty or forty other states have followed
> this example set by Texas. It has become so
> large that cooperative arrangements were work-
> ed out with A. & M. College for holding the

school at their institution. The State Department of Vocational Education was also invited into the picture to assist with the instructional work.

"The next school sponsored by this Department will be held at College Station February 19-23. The lectures include such topics as sanitary problems of impounding reservoirs, the control of microscopic organisms in water reservoirs, conservation of our water resources, stream pollution by E. C. Sullivan of the U. S. Public Health Service, legal aspects of stream pollution, preparing for emergencies, the water works rating system of the State Department of Health, economics of water treatment, water treatment problems in sulphur production, coagulation experiences, iron removal, ozonation of water, various sewage problems, laboratory practices and a written examination.

"This mass method of taking the State Board of Health sanitation and health protection program to the water works and sewage works fraternity of this State is, as we interpret it, in line with the duties assigned to the State Board of Health in the prevention and spread of disease and has been found to be the most practical and feasible one program yet developed.

"Instruction is not given only by men from the State Department of Health but also other qualified men selected who are specialists in their line. The attached program covers more fully the various angles of the water and sewage instruction that is to be offered. You will further note that the meals for the attendants or students will be served in the College Mess Hall and dormitory space has been made available for the attendants. All classes will be held in the classrooms of the college buildings and college laboratory.

"Since some question has arisen about expenses to conventions and since this is strictly a school and in no sense a convention, we

are writing to inquire whether or not in your opinion the expenses incurred in holding this school or carrying forward this program of prevention and spread of water-borne diseases is legitimate. The only expense incurred by the State Department of Health is the travelling expenses of the personnel of the Department engaged and participating in conducting this school."

We quote from your letter of February 16, 1940, as follows:

"Reference is made to my letter to you of October 31, 1939, in which descriptions of activities of certain divisions of the State Health Department were given. Among these statements was one marked K, Milk Seminar. As the time is near at hand for the opening of this Seminar in Dallas on March 4, it becomes necessary to ask your opinion on the question of whether or not employees of this Department attending this Seminar as instructors and students will be allowed their expenses for this purpose.

"For your further information, there is enclosed a program of this Seminar which is being conducted jointly by the U. S. Public Health Service, Texas State Board of Health and the Dallas City Health Department. The purpose of the Seminar is to afford city and county health officials, inspectors and milk supervisors, as well as other persons interested in milk sanitation, an opportunity to obtain instructions without cost or tuition from experts in this particular field. The program arranged is very comprehensive and will consume all the time allotted for holding the Seminar. Entertainment features such as are usually found at conventions are not provided for either by raising necessary finances or the allotment of time. This is strictly a school and in no sense a convention.

"As this Seminar is for the sole purpose of disseminating information to persons engaged in public health work in relation to transmission of disease through milk and ultimately affording a means of 'prevention of infection of a contagious

disease effecting the lives of citizens within
the State', it is believed that Article 4419 of
the Revised Civil Statutes of 1925 affords ample
authority for employees of the State Health De-
partment participating therein."

Article 4419, Vernon's Annotated Civil Statutes,
above referred to in your letters of inquiry, reads as fol-
lows:

"The State Board of Health shall have gener-
al supervision and control of all matters per-
taining to the health of citizens of this State,
as provided herein. It shall make a study of
the causes and prevention of infection of con-
tagious diseases affecting the lives of citizens
within this State and except as otherwise provided
in this chapter shall have direction and control
of all matters of quarantine regulations and en-
forcement and shall have full power and author-
ity to prevent the entrance of such diseases
from points without the State, and shall have
direction and control over sanitary and quaran-
tine measures for dealing with all diseases with-
in the State and to suppress same and prevent
their spread. The president of the board shall
have charge of and superintend the administra-
tion of all matters pertaining to State quaran-
tine."

Under the heading of Maintenance and Miscellaneous
of the General Appropriation Bill (Senate Bill No. 427, Acts
of the 46th Legislature) for the State Board and Department
of Health we find the following:

| "Maintenance and Miscellaneous | For the Years Ending | |
|---|---|---|
| | August 31, 1940 | August 31, 1941 |
| 1. Supplies and equipment for Malaria Propagation to be used in cooperation with the State Board of Control for treatment of the insane. . . | $ 1,085.00 | $ 1,085.00 |
| 2. Supplies for Indexing Birth and Death Certificates and contingencies to be supple- mental by Works Progress Ad- ministration in the amount of ($60,000.00) . . . . . . | 2,500.00 | 2,500.00 |

Honorable George W. Cox, Page 5

3. Board of Health Per Diem and
   Expenses . . . . . . . . . . . . . . $ 2,500.00    $ 2,500.00

4. Rent on Tabulating Machine . .    1,500.00      1,500.00

5. Traveling Expenses, Entire De-
   partment . . . . . . . . . . . .   27,080.00     27,080.00

6. Postage . . . . . . . . . . . . .   5,500.00      5,500.00

7. Surety Bond . . . . . . . . . . .    100.00        100.00

8. Support, Maintenance and Extra
   Help for Laboratory, no salary
   to exceed $100.00 per month and
   for making and distributing Tox-
   ois, Typhoid Vaccine and anti-
   rabies Vaccine . . . . . . . . .   14,950.00     14,950.00

9. Printing . . . . . . . . . . . .    2,500.00      2,500.00

10. Office Supplies and Equipment,
    Telephone, Telegraph, Freight,
    Cartage, Express, Box Rent and
    Contingencies. . . . . . . . . .   5,500.00      5,500.00

11. General Repair, General Plant
    Service. . . . . . . . . . . . .    200.00        200.00

12. Dues and Subscriptions . . . .     200.00        200.00

13. Educational, Medical, Laundry,
    Janitor and General Operating
    Supplies. . . . . . . . . . . .     250.00        250.00

14. Samples Collected by Food and
    Drug Inspectors. . . . . . . . .    300.00        300.00

15. Expenses for collecting and as-
    sembling such technical informa-
    tion as is essential to the con-
    trol of salt water pollution af-
    fecting the Angelina, Neches and
    Sabine Rivers. . . . . . . . . .   5,000.00      5,000.00
    Total - Maintenance and Miscella-
    neous. . . . . . . . . . . . . . .$69,165.00    $69,165.00*

Honorable George W. Cox, Page 6


In the general rider of the General Appropriation Bill, under the heading "Traveling Expenses", we find the last paragraph of Section 3, providing:

"No moneys herein appropriated shall ever be spent to pay the traveling expenses of any State employee to any type of convention within this State or without the State."

Subdivision(j) under the same heading of "Traveling Expenses", provides as follows:

"Except as otherwise specifically exempted, the provisions of this Act shall also apply to Department heads and members of Commissions."

We quote from our opinion No. O-1195, written by Honorable R. W. Fairchild, Assistant Attorney General, directed to Honorable Clifford B. Jones, President, Texas Technological College, Lubbock, Texas, as follows:

"In determining whether reimbursement may be made for traveling expenses in any event, it must be recognized that no reimbursement may be had unless the purpose of the trip upon which such expenses were incurred was the accomplishment of 'State's business.'

"'State's business,' as relates to the authority of a department to incur traveling expenses to be paid by the State, seems to us to embody at least the following elements:

"1. A reasonable, substantial, and direct relation between the business to be transacted on the trip and the accomplishment of the functions of government entrusted to the particular department.

"2. A reasonable, substantial, and direct relationship between the method by which the particular business is intended to accomplish the function of Government entrusted to the department, and the powers granted the department by law for the accomplishment of such functions."

We quote from Opinion No. O-1737, written by Honorable R. W. Fairchild, Assistant Attorney General, addressed to the State Department of Education, Austin, Texas, as follows:

Honorable George W. Cox, Page 7

"Obviously it could not have been intended by the Legislature that the restriction against paying traveling expenses to conventions should apply to authorized meetings called by agencies of government for the purpose of accomplishing the functions of government imposed upon them. To apply such a construction would be to impute to the Legislature the intent to paralyze by indirection the administration of the very affairs of government for which appropriations were made at length in Senate Bill 427 of the 46th Legislature. We are impelled, therefore, to the conclusion that the Legislature used the word 'convention' in its especial or popular, rather than its broad, significance, conveying the idea, generally, of a meeting of members or delegates of a private organization, party, club, society, or the like, for the accomplishment of some common object."

You state in your letters of inquiry that the only expense incurred by the State Department of Health would be the traveling expenses of the personnel of the Department engaged in and participating in conducting these schools. We believe that the purposes of the trips above mentioned and the conducting of said schools whereby such expenses are incurred would be the accomplishment of "state's business". Futhermore, a reasonable, substantial, and direct relation exists between the business to be transacted on these trips and the accomplishment of the functions of government entrusted to your particular department.

Therefore, you are respectfully advised that it is the opinion of this department that your question as presented in your letter of February 15, 1940, and a similar question presented in your letter of February 16, 1940, must be answered in the affirmative.

Trusting that the foregoing fully answers your inquiry, we remain

Yours very truly

APPROVED FEB 27, 1940

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

AW:LM

ATTORNEY GENERAL OF TEXAS

*Ardell Williams*

By

Ardell Williams
Assistant

APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN